**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **LAVONE WELLS, individually as next of kin and on behalf of the wrongful death beneficiaries of John Wells, deceased,** | ) | |
| **Plaintiff,** | ) | **Case No. 3:26-cv-00957** |
| | ) | **Judge Aleta A. Trauger** |
| **v.** | ) | |
| **MARYVILLE JAMESTOWN OPCO, LLC D/B/A FOOTHILLS TRANSITIONAL CARE AND REHABILITATION,** | ) | |
| **Defendant.** | ) | |

# MEMORANDUM

Plaintiff Lavone Wells, as the surviving spouse and next of kin of John Wells, brings state law claims against defendant Maryville Jamestown OPCO LLC d/b/a Foothills Transitional Care and Rehabilitation ("Foothills"). (Compl., Doc. No. 1-1.) Foothills has filed a Motion to Compel Arbitration and Stay Lawsuit (Doc. No. 2) under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., and a Motion to Transfer Venue (Doc. No. 43) under 28 U.S.C. § 1404(a). Mrs. Wells has filed a Motion to Amend Complaint under Federal Rule of Civil Procedure 15(a)(2). (Doc. No. 29.)

For the following reasons, the court concludes that an evidentiary hearing is warranted, as Mrs. Wells' allegations have placed the validity of the Optional Dispute Resolution Agreement (the "Agreement") "in issue." Because an evidentiary hearing is needed, the court will defer ruling on both Foothills' Motion to Compel Arbitration and Stay Lawsuit and Mrs. Wells' Motion to

Amend Complaint until the factual issues implicating the validity of the Agreement are resolved. The court will deny Foothills' retransfer motion.

## I. BACKGROUND

Foothills is a limited liability company that is licensed to operate a skilled nursing and rehabilitation facility in Maryville, Tennessee. (Doc. No. 5 ¶ 3.) John Wells was a resident of Foothills for 27 days. (Doc. No. 1-1 ¶ 7.) Mr. Wells, age 73, was admitted to Foothills on December 15, 2023 for short-term rehabilitation care after being treated for pneumonia and sepsis at a nearby medical center. (Doc. No. 18 at 2.) At the time he was admitted to Foothills, Mr. Wells suffered from Parkinson's disease and dementia. (*Id*. at 2.) During his admission, Mr. Wells reviewed and signed various documents, including medical and consent forms. (*Id*.; Doc. No. 18-1.) "His wife, Lavone Wells, was present throughout the admissions process on December 15 to review the paperwork and assist him as needed." (Doc. No. 18 at 2.) Two days after entering care, the nursing staff at Foothills recorded in Mr. Wells' care plan that he "understands consistent, simple, directive sentences." (*Id*. at 3.)

On January 11, 2024, Mr. Wells suffered a fall at Foothills, resulting in a fractured right hip. (*Id*. at 4.) He was taken by ambulance to a nearby hospital. (*Id*.) After surgery, Mr. Wells entered hospice care at home. He died a few weeks later. (*Id*. at 5.) Mrs. Wells has filed this action against Foothills on Mr. Wells' behalf. (Doc. No. 1-1.)

At this stage, the parties dispute whether Mr. Wells signed other forms in addition to medical consent forms while receiving care at Foothills. Foothills maintains that Mr. Wells also signed the Agreement under which he agreed to have any claim or dispute asserted by him against Foothills or its affiliates resolved through binding arbitration. (Doc. Nos. 2 ¶¶ 1–5.) The Agreement provides that mandatory arbitration extends to "any and all claims or disputes" asserted against Foothills or its affiliates by Mr. Wells and his "estate, successors, assigns, heirs, personal

representatives, executors and administrators." (Doc. No. 2-1 § 1.) Likewise, the Agreement defines "Disputes" to encompass "tort claims including, but not limited to, claims for wrongful death." (*Id.*)

Mrs. Wells disagrees, arguing that Foothills has failed to present (1) competent, authenticated evidence establishing that Mr. Wells executed the Agreement; or (2) that Mr. Wells had the requisite capacity to "knowingly assent[] to arbitration." (Doc. No. 18 at 1, 6.) First, Mrs. Wells asserts that "genuine factual questions" exist "as to whether Mr. Wells personally executed the" Agreement. (*Id.* at 8.) For support, she points to inconsistencies in the Agreement itself as it appears in the record. As an example, page 7 of the Agreement shows that the execution of the Agreement was witnessed on December 15, 2023. (Doc. No. 2-1 at 8.) However, page 10 of the same Agreement bears a different date—January 9, 2024—as the date that Mr. Wells allegedly signed the Agreement. (*Id.* at 11.) According to Mrs. Wells, a "meaningful distinction" and physical "contrast" exists "between the handwritten signatures obtained at admission" on December 15 "and the later electronic execution just a few weeks later" on January 9. (Doc. No. 18 at 7–8.) In other words, the signatures appear different, calling into question whether Mr. Wells was the person who signed the Agreement in the first place or whether the signature was forged. (*Id.*)

Other suspicious details abound. For instance, the Docusign Certificate of Completion—the audit log associated with the electronic signing event—reveals that Mr. Wells allegedly began his review of the 34 pages of electronic documents (including the Agreement) at 8:26 a.m. central time on January 9, 2024. (Doc. No. 18-3 at 1.) In approximately two minutes, Mr. Wells allegedly signed the various documents 13 separate times and affixed his initials 26 times. (*Id.*) Adding to the suspicion, the various forms that Mr. Wells signed in those two minutes included medical

forms that he had already signed during his admission process on December 15, 2023. (Doc. Nos. 18 at 3–4; 18-1; 18-2.) Unlike the forms that Mr. Wells signed on December 15, Mrs. Wells claims that she never had the opportunity to assist her husband with review of the forms that he allegedly signed on January 9 because Foothills never informed her of this event. (Doc. No. 18 at 4.)

Second, Mrs. Wells alleges that Mr. Wells' "medical records raise substantial doubts about his capacity to understand and voluntarily enter into an arbitration agreement," even if he was the person who signed the Agreement. (*Id*. at 7.) On this point, Mrs. Wells highlights that Mr. Wells was recovering from pneumonia and sepsis and had preexisting diagnoses for Parkinson's disease and dementia. (*Id*. at 2.) Foothills' own records apparently cast doubt on Mr. Wells' mental capacity during this timeframe: two days after entering care, the facility's nursing staff documented that Mr. Wells "understands consistent, simple, directive sentences." (*Id*. at 7 (quotation marks omitted).) In Mrs. Wells' view, "[t]his contemporaneous assessment, made by the facility itself, reflects significantly limited comprehension and is inconsistent with the level of understanding required to knowingly assent to a 10-page arbitration agreement embedded within a 30+ page admissions packet." (*Id*.)

## II. PROCEDURAL HISTORY

Mrs. Wells originally filed this action in the Circuit Court for Davidson County, Tennessee on May 6, 2025. (Doc. No. 43-1.) The original Complaint named Smoky Mountain Healthcare, Inc. ("Smoky Mountain"), the operator of record listed on the facility's license with the Tennessee Department of Health, as the original defendant. (*Id*.) On September 2, 2025, Mrs. Wells filed a First Amended Complaint, adding Foothills as a defendant. (Doc. No. 1-1). The First Amended Complaint, the operative pleading, asserts healthcare liability claims under Tennessee law arising from the injuries that Mr. Wells sustained while under Foothills' care and supervision. (*Id*. ¶¶ 1, 14–24.)

In November 2025, the plaintiff took a voluntary nonsuit against Smoky Mountain, the only non-diverse party (Doc. No. 1-4 at 284–87), and Smoky Mountain was dismissed from the action with prejudice. (Doc. No. 1 ¶¶ 1, 12.) Thereafter, Foothills removed this case to federal court under 28 U.S.C. § 1441(a) on diversity grounds. (*Id.* ¶¶ 1–6.) Although the action was originally filed in a state court that lies exclusively within the Middle District of Tennessee, Foothills improperly removed the case to the United States District Court for the Eastern District of Tennessee. *See* 28 U.S.C. § 1441(a). Foothills also filed a Motion to Compel Arbitration and Stay Lawsuit and an accompanying memorandum (Doc. Nos. 2–3), relying on Section 1 of the Agreement. (Doc. No. 2-1 § 1.) The Motion to Compel remains pending and is opposed by Mrs. Wells. (Doc. No. 18.)

On December 29, 2025, Foothills filed a Motion to Transfer Venue from the Eastern District of Tennessee to this court. (Doc. No. 20.) In its accompanying memorandum, Foothills admitted that it "erred" when removing to the Eastern District of Tennessee under § 1441(a). (Doc. No. 21 at 2.) Despite its "improper" removal, Foothills urged the Eastern District of Tennessee to transfer the case to this court "in the interest of justice." (*Id.* at 1, 3.) Mrs. Wells opposed the transfer motion, arguing that Foothills' removal was procedurally flawed and that remand to the Circuit Court for Davidson County, Tennessee was appropriate. (Doc. Nos. 15–16, 24.)

Later, Mrs. Wells filed a Motion for Leave to Amend Complaint to add Clearview Healthcare Management TN LLC ("Clearview") as a defendant. (Doc. No. 29.) Mrs. Wells asserts that Clearview managed Foothills during the relevant period and that amendment is otherwise appropriate because the motion was timely under the scheduling order entered by the Eastern District of Tennessee. (Doc. Nos. 27, 29–30.) Mrs. Wells' amendment request remains pending and is opposed by Foothills. (Doc. No. 31.)

On July 13, 2026, Judge Thomas A. Varlan of the United States District Court for the Eastern District of Tennessee granted Foothills' transfer motion, denied Mrs. Wells' remand motion, and transferred the case to this court under 28 U.S.C. § 1406(a). (Doc. Nos. 33–34.) In his Memorandum Opinion and Order, Judge Varlan agreed with the arguments advanced by Foothills urging transfer to the Middle District of Tennessee because the case had been removed to the wrong district court. (Doc. No. 33 at 5.)

Only three weeks after transfer to this court, Foothills filed a new motion, requesting retransfer back to the Eastern District of Tennessee. (Doc. No. 43.) Foothills argues that retransfer is required because the "arbitration is to take place in or near the city in which [Foothills] is located." (*Id*. at 4 (citing Doc. No. 2-1 § 4(b)).) According to Foothills, this court is powerless to act and "must" transfer the action back to the Eastern District of Tennessee. (*Id*. (emphasis omitted).) Foothills' retransfer motion remains pending and is opposed by Mrs. Wells. (Doc. No. 47.)

## III. DISCUSSION

### A. Foothills' Motion to Compel Arbitration

The FAA "establishes a liberal federal policy favoring arbitration agreements." *Fleming v. Kellogg Co.*, No. 23-1966, 2024 WL 4534677, at *3 (6th Cir. Oct. 21, 2024) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018)) (internal quotation marks omitted). Tracing its roots back to 1925, the FAA was enacted in "response to hostility of American courts to the enforcement of arbitration agreements," which was "inherited from then long-standing English practice." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001).

Section 2 is the FAA's "primary substantive provision." *Abbas v. Truist Bank*, 774 F. Supp. 3d 929, 933 (M.D. Tenn. 2025). This section "places arbitration agreements on an equal footing with other contracts." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citation omitted).

Under Section 2, a contract to arbitrate is valid and enforceable unless "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, like any other contract, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68 (quoting *Doctor's Assocs. v. Casarotto,* 517 U.S. 681, 687 (1996)). Section 4 of the FAA allows parties "aggrieved by" another's "failure . . . or refusal . . . to arbitrate" under a written arbitration agreement to petition a district court with jurisdiction "for an order directing that such arbitration proceed." 9 U.S.C. § 4. Under Section 4, the court must direct "the parties to proceed to arbitration," so long as the court is "satisfied that the making of the agreement for arbitration . . . is not in issue." *Id*. However, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id*.

The party seeking to compel arbitration bears the initial burden to provide evidence that an arbitration agreement exists. *BLC Lexington SNF, LLC v. Townsend*, 171 F.4th 788, 794 (6th Cir. 2026) (citing *GGNSC Louisville Hillcreek, LLC v. Est. of Bramer ex rel. Bramer*, 932 F.3d 480, 484 (6th Cir. 2019)). If the movant does that, the burden then shifts to the non-movant to place the validity of the agreement at issue. *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 404 (6th Cir. 2025) (citing *Boykin v. Family Dollar Stores of Mich.*, LLC, 3 F.4th 832, 839 (6th Cir. 2021)). Courts apply the summary judgment standard to determine whether the non-movant has put the formation of an arbitration agreement in issue. *BLC Lexington*, 171 F.4th at 794 (citing *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021)); *see also Boykin*, 3 F.4th at 838 ("The question whether the party opposing arbitration has put the making of the arbitration contract 'in issue' looks a lot like the question whether a party has raised a 'genuine issue as to any material fact.'" (citation omitted)). The non-movant "must offer evidence that she

did not sign the agreement or otherwise accept its terms." *Memmer*, 135 F.4th at 405 (citing *Boykin*, 3 F.4th at 839).

Here, Foothills has met its initial burden by furnishing a written arbitration Agreement, which Mr. Wells allegedly signed. (Doc. No. 2-1.) Foothills argues that the claims asserted by Mrs. Wells in the First Amended Complaint fall within the scope of the Agreement and therefore must be arbitrated. (Doc. No. 2 ¶¶ 1–6.)

In opposition, Mrs. Wells has alleged facts contesting whether Mr. Wells was the person who signed the Agreement in the first place, thereby challenging the authenticity of the Agreement relied on by Foothills. She identifies contradictory dates appearing on the face of the Agreement—a *witnessing* date of December 15, 2023 that is inconsistent with the *execution* date of January 9, 2024. (Doc. No. 18 at 8–9.) The data reflected in the DocuSign Certificate of Completion deepens the confusion. According to that document, Mr. Wells—73-years old with preexisting diagnoses of Parkinson's disease and dementia and recovering from pneumonia with sepsis—allegedly reviewed and signed a 34-page document 13 separate times and initialed 26 times in approximately two minutes. (Doc. No. 18-3.) Not to be outdone, he apparently completed this task before 8:30 a.m. in the morning—two days before he sustained injuries at Foothills. (Doc. No. 18 at 9.) Mrs. Wells also alleges that a "meaningful distinction" and a "contrast" exist between Mr. Wells' "handwritten signature obtained at admission" on December 15 "and the later electronic execution just a few weeks later" on January 9. (Doc. No. 18 at 7–8.)

In addition to her authenticity-based allegations, Mrs. Wells charges that Mr. Wells lacked the "capacity to understand and voluntarily enter into an arbitration agreement," even if he was the person who signed the Agreement. (*Id.* at 7; *see also id.* at 3, 6.) For this allegation, she relies on Mr. Wells' acute illness (pneumonia and sepsis) and his preexisting diagnoses (Parkinson's disease

and dementia). (*Id*. at 2.) She also leans on Foothills' contemporaneous written assessments of Mr. Wells' comprehension abilities. (*Id*. at 7.) Only days after entering care, Foothills' staff documented that Mr. Wells "understands consistent, simple, directive sentences." (*Id*. at 3.) In Mrs. Wells' judgment, this written statement by Foothills' professional care team reflects the company's awareness of Mr. Wells' "significantly limited comprehension abilities" during this timeframe. (*Id*. at 3.) In her view, Foothills—a "fiduciary" on which Mr. Wells was "dependent . . . for his medical and rehabilitative care"—had notice that Mr. Wells lacked the capacity to freely and voluntarily enter into the Agreement. (*Id*. at 7, 10.) For these reasons, Foothills cannot present "competent evidence establishing that Mr. Wells . . . knowingly assented to arbitration" or that he "was capable of giving meaningful assent to the agreement" even if he signed it on January 9, 2024. (*Id*. at 6.)

Based on these allegations, the court finds that an evidentiary hearing is necessary to review the proof (1) surrounding the execution of the Agreement; and (2) Mr. Wells' physical and mental condition at the time that he allegedly signed the Agreement. *Vaughan v. United Parcel Serv.*, No. 3:06-CV-0626, 2007 WL 2908841, at *8 (M.D. Tenn. Oct. 4, 2007) (summary judgment is "inappropriate" when the evidence and the inferences drawn in favor of the non-moving party raise "a factual dispute."). First, Mrs. Wells' allegations as to authenticity put the validity of the Agreement "in issue." 9 U.S.C. § 4. She alleges that the Agreement was the product of fraud and forgery. (*Id*. at 3–4, 6–9.) In Tennessee, fraud is an affirmative defense to the validity and enforcement of a contract. *Taylor v. Butler*, 142 S.W.3d 277, 284 (Tenn. 2004); *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 746 (Tenn. 2015) (recognizing that "the FAA permits states to regulate, and even invalidate, an arbitration agreement by application of general state-law contract defenses such as fraud, duress, or unconscionability.").

In addition, Mrs. Wells alleges that Mr. Wells lacked the capacity to enter into the Agreement. His "comprehension" was "significantly limited," as evidenced by his acute illness and pre-existing diagnoses. (Doc. No. 18 at 2, 7.) Foothills allegedly recognized Mr. Wells' diminished capacity in its own contemporaneous records. (*Id.* at 3.) Ignoring these warnings, Foothills proceeded to present a 34-page electronic agreement to Mr. Wells via DocuSign in the early morning hours of January 9, 2024. Mr. Wells allegedly reviewed and signed 34 pages of documents without the assistance of his wife. These allegations are more than enough to warrant an evidentiary hearing. *See Taylor*, 142 S.W.3d at 285 (lack of contractual capacity is grounds for refusal to enforce contract (citation omitted)).

**B. Foothills' Motion to Transfer Venue**

Section 1404(a) permits a district court to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). District courts have "broad discretion" to transfer an action under § 1404(a). *Owens v. Hill*, No. 3:23-CV-01093, 2024 WL 1895112, at *2 (M.D. Tenn. Apr. 30, 2024); *see also Jackson v. L & F Martin Landscape*, 421 Fed. App'x 482, 484 (6th Cir. 2009). In exercising that discretion, a court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citation omitted).

However, the transferee court should not revisit the earlier transfer decision absent "extraordinary circumstances such as where [it] was clearly erroneous and would work a manifest injustice." *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). If the original transfer decision was "plausible," the "inquiry is at an end." *Id.* at 819. The reluctance to

revisit a transfer decision reflects a desire to avoid "the possibility of forcing a transferred case into perpetual litigation by 'playing jurisdictional ping-pong.'" *Moses*, 929 F.2d at 1137 (quoting *Christianson,* 486 U.S. at 816). After all, "[n]othing is more wasteful than litigation about where to litigate, particularly when the options are all courts within the same legal system that will apply the same law." *Bowen v. Massachusetts*, 487 U.S. 879, 930 (1988) (Scalia, J., dissenting).

Foothills asserts that retransfer is warranted because "the alleged acts of negligence took place" in that district and the Agreement requires arbitration "in or near the city" where Foothills is located. (Doc. Nos. 43 at 2–3; Doc. No. 2-1 at 4.) Tellingly, Foothills does not identify any post-transfer development that would justify retransfer and instead relies on circumstances that were known at the time it moved to initially transfer this action. For that reason alone, the court will deny Foothills' retransfer motion.

The court first notes that this action was filed by Mrs. Wells in the Circuit Court for Davidson County, Tennessee. (Doc. No. 43-1.) That court lies exclusively within the Middle District of Tennessee. The statutory provision authorizing transfer is clear: a defendant must remove the case "to the district court . . . embracing [the state court] where such action is pending." 28 U.S.C. § 1441(a). Ignoring that clear statutory command, Foothills removed the case to the Eastern District of Tennessee. (Doc. No. 1 ¶¶ 1–6.) Foothills has since admitted that it "erred" when it removed the state court action to the Eastern District of Tennessee, which was "improper." (Doc. No. 21 at 2–3.) When seeking transfer for the first time, Foothills represented to the Eastern District of Tennessee that transferring the action to this court would promote "the interest of justice" because transfer would remedy Foothills' improper removal under § 1441(a). (Doc. No. 21 at 4.) Judge Varlan relied on that representation when he transferred this case in July. (*See, e.g.*, Doc. No. 33 at 5.)

After three weeks of litigating in this court, Foothills moved for retransfer. (Doc. No. 43.) That motion fails to articulate any post-transfer development favoring retransfer. Foothills' non-specific references to "the convenience of parties and witnesses" located within the Eastern District of Tennessee are not persuasive because those facts were known to Foothills at the time it sought transfer to this court. Regardless, Foothills has not identified any witness that sits outside of this court's subpoena power, let alone any witness who would refuse to appear in this court. *See* Fed. R. Civ. P. 45(c)(1)(B) (permitting nonparty witnesses to be commanded to attend trial, hearing, or deposition within the state where the witness resides, is employed, or regularly transacts business in person).

The fact that the venue provision in the Agreement provides for arbitration near Foothills' facility in Maryville, Tennessee is also irrelevant in deciding whether to retransfer this action back to the Eastern District of Tennessee. (Doc. No. 43 at 3–5.) That provision provides that "[t]he *arbitration* shall take place in or near the city in which [Foothills] is located, unless the parties mutually agree on another location." (Doc. No. 2-1 § 4(B) (emphasis added).) As it stands, the court must initially determine whether the Agreement allegedly entered by Mr. Wells is valid and enforceable. Foothills' reliance on that provision as somehow justifying transfer puts the cart before the horse.

In sum, the court finds that retransfer would be a waste of resources and time for everyone involved. Venue in this court is clearly proper, 28 U.S.C. § 1441(a), which Foothills concedes because it moved once to transfer the action into this court. At the same time, Foothills has not identified any post-transfer development that weighs in favor of retransfer. Finally, Mrs. Wells opposes retransfer and originally filed this action in a state court that falls within the boundaries of this district court. (Doc. No. 47.) Given these circumstances, the court cannot conclude that

Judge Varlan's original transfer decision was "clearly erroneous" or that "extraordinary circumstances" favor retransfer. *Christianson*, 486 U.S. at 817. This action will remain in this court.

## IV. CONCLUSION

To summarize, Mrs. Wells has placed the validity and enforceability of the Agreement "in issue" within the meaning of Section 4 of the FAA. 9 U.S.C. § 4. The court will proceed to resolving the factual disputes in an evidentiary hearing. In light of this ruling, the court will defer consideration of Foothills' Motion to Compel Arbitration and Stay Lawsuit and Mrs. Wells' Motion to Amend Complaint. The court will deny Foothills' retransfer motion.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge